**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

97 DEC 19 AM 10: 12

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LANA KAY CULBERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-96-S-1852-NE |
| | ) |
| GRIFFIN INDUSTRIES, INC., | ) |
| d/b/a BAKERY FEEDS, INC., | ) |
| and DAVE REKO, | ) |
| | ) FNTERED |
| Defendants. | ) |

DEC 1 8 1997

### MEMORANDUM OPINION

Lana Kay Culberson's brief turn as custodian at the bakery processing plant operated by Griffin Industries, Inc. in Centre, Alabama, provides the setting for this case.[1] Mrs. Culberson was hired as a part-time cleaning person at the plant on September 28, 1995 by general manager Dave Reko.[2] She was instructed to clean the company's managerial offices after normal business hours. For that work, she was to be paid "more than" $10 per hour.[3] She began performing those duties the day she was hired.

---

[1] Griffin Industries, Inc., operates bakery processing plants and rendering facilities throughout the southeastern United States. At its bakery processing plants, such as the one at issue in this case, the company recycles waste from bakeries into animal feed supplement. Griffin Industries's bakery processing plant located in Centre, Alabama, operates under the name Bakery Feeds, Inc. References to Griffin Industries are intended to refer to both entities.

[2] The company contacted Culberson about the job opening through her husband, who had begun work at the plant approximately two weeks earlier.

[3] There is some dispute over the salary promised to Culberson. Her predecessor was paid $75 per week for 7.5 hours of work, or $10 per hour. Culberson asserts she was promised she would be paid "more than the person who had previously held the position." (Equal Employment Opportunity Commission (EEOC) Affidavit at 3.) Moreover, she was told she "could work as many hours as [she] wanted to get the job done...." (Culberson Affidavit ¶ 4.) For purposes of summary judgment, the court must accept plaintiff's assertions of fact as true. The actual facts may, or may not, be different. _____

35

As Culberson began work that first day, she was greeted by "girlie pictures pinned to the wall of one of the manager employees."[4] (Culberson Affidavit ¶ 3.) The women in the pictures were "seductively dressed in very skimpy linen." (Id.) In the same employee's office hung a plaque stating "I am looking for the perfect woman." (Id.) The next day, Culberson complained to plant manager Reko: "I did not believe that those scantily clad women in those pictures were appropriate to be in a managerial office and they should be taken down."[5] (Id.) Reko laughed and told Culberson the photos were "Ed's idea of a perfect woman." Following this exchange, Culberson "felt stupid for even mentioning it to [Reko]." (Id.) Neither the pinups nor the plaque were removed.

Culberson returned to work several days later.[6] While Culberson worked, "Dave Reko was in and out of the office...." (Culberson Affidavit ¶ 5.) Culberson saw no one else in the office that evening. As she walked past the secretary's desk, which had been clean a moment before, Culberson noticed "a piece of paper left there that wasn't there before." (Id.) On the paper was a drawing of a penis. Culberson did not see who placed the drawing on the desk. She "was really offended and ... picked it up, wadded it up and through [sic] it in the trash can and ... removed it with

---

[4] Plaintiff's EEOC affidavit identifies this employee as Ed Buttery. (EEOC Affidavit at 2.)

[5] Defendants dispute plaintiff's claim, made only in her affidavit submitted in opposition to the pending motion for summary judgment, that she told Reko the pictures should be removed. Defendants' objection to the submission of this affidavit is addressed at page 6 infra.

[6] Although Culberson's precise work schedule is unclear from the record before the court, she was to work "basically two evenings a week." (Id.)

the rest of the trash." (*Id.*) Culberson told no one at Griffin Industries about the drawing; nor did she complain to Reko "because of the way he reacted to the other complaint." (*Id.*) Subsequently, Culberson worked two days without incident.

On her fifth day of work — October 5, 1995 — Culberson worked alone cleaning the office kitchen.[7] As she worked, Dave Reko entered the kitchen. Plaintiff recounts the following events then occurred:

> He walked up to me, very close, and I couldn't believe that he got that close, as there was no reason for him getting that close and he had a coffee pot in his hand. At that time I was at the sink and he just stood there for a split second and then leaned in with his right shoulder and touched my left breast, right in my face, and said, with bedroom type eyes and he said "hi" obviously trying to be sexy and I was shocked, repulsed, and very, very upset and I immediately stepped back to get his right shoulder off my left breast and tried to get back away from him and I said, "bye."

(Culberson Affidavit ¶ 7.) When plaintiff pulled away, Reko's demeanor changed: "he went from his bedroom eye look to a very hostile and mean look and he stormed out of the kitchen, stopped at the door ... and turned back and looked at me very mean and hostile...." (*Id.*)

Within five minutes after this encounter, Reko's assistant, Woodie Puntney,[8] summoned the plaintiff to Reko's office to discuss

---

[7] The actual number of days plaintiff worked is disputed: defendants claim plaintiff worked only four days; plaintiff claims to have worked five days. The court accepts plaintiff's assertion as true, as it must at this stage of the litigation. It is undisputed, however, that plaintiff's final day of work at Griffin Industries' bakery processing plant was October 5, 1995.

[8] Puntney's precise job title is unclear. Plaintiff refers to him as a supervisor who handled personnel matters at the plant. (Culberson Affidavit ¶ 3; *see also* EEOC Affidavit at 3.)

her salary.[9] At that meeting, plaintiff claims Reko told her in a "raised hostile voice" that her job "only pays $6.00 per hour." (*Id.* ¶ 8.) Culberson refused to work for less than the $10.00 an hour wage her predecessor had been paid, and told Reko she would not undergo the company's required physical examination "until he got my pay straight." (*Id.*) She left work and returned home, where she received a call from Puntney offering her $7.00 an hour to return to work. (*Id.* ¶ 9.) Plaintiff agreed to return to the plant at 11:00 a.m. the next day, but only for the purpose of discussing her salary with Puntney. (*Id.*) Upon plaintiff's arrival at the plant, Puntney met her in the parking lot and told her "Katie, I don't know how to say this to you, but Reko has replaced you, I'm sorry." (Culberson Affidavit ¶ 10.)

Shortly thereafter, Culberson entered the office to return her office keys, "said a few words to [Reko] that expressed my anger and disgust for what he had done to me," and left. (*Id.*) As Culberson dropped her husband off for work the next day, she saw Reko getting out of his car and attempted to apologize to him for "saying a cuss word to him" the previous day.[10] (*Id.* ¶ 11.) Plaintiff describes that encounter as follows:

> he looked at me very shortly with a very hostile and rude look and then walked away as if ignoring me and I said to him, you didn't do me right on my pay, then he whirled around and looked at me very hostile and rudely and said, I never put pencil to it and turned around and walked away.

---

[9] Although plaintiff had already worked several days, she had not yet received her first paycheck.

[10] Culberson asserts that her apology was prompted out of fear that her husband's job was in jeopardy because of her outburst to Reko.

(*Id.*)

Culberson next alleges that her husband, who remained a Griffin employee, was approached at the end of October, 1995, by "management personnel," who asked him to "go ahead and quit because of what Dave Reko did to his wife."[11]  (Culberson Affidavit ¶ 13.) He declined the invitation.  Instead, Mr. Culberson telephoned Tony Griffin, vice-president of Griffin Industries, on October 29, 1995, to inform him about the treatment he and his wife were receiving. Later on that date, Griffin telephoned Mrs. Culberson to set up a meeting to discuss her complaints.  During the meeting, which took place at the plant in Centre, Alabama, Culberson was asked:  "what did I want out of this;" "[did] I want[] them to bring Ricco [sic] out so I could punch him in the nose;" and "[did] I want[] them to fire him?"[12]   (EEOC Affidavit at 4.)   Plaintiff declined those options, and refused to proffer her own solution.  (*Id.*)

The next day, plaintiff was notified by Larry Whitler, director of human resources for Griffin Industries, that an investigation had been completed, the offending pictures had been removed, and "hands were slapped," but that the company found no evidence of sexual harassment.   (Culberson Affidavit ¶ 15.) Culberson filed a charge of discrimination with the Equal Employment Opportunity Commission on November 22, 1995.   She received notice of right to sue on April 23, 1996.   This action followed.

---

[11] The name of this individual is absent from the record.

[12] Griffin Industries' personnel director, who is identified in the record only by title, also attended this meeting.

Culberson asserts four claims against defendant Griffin Industries, Inc. and Dave Reko. She alleges defendants discriminated against her because of her sex by subjecting her to *quid pro quo* sexual harassment, a sexually hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* Plaintiff also pleads a single pendent state law claim against both defendants for the tort of outrage.

The case now is before the court on defendants' motions for summary judgment as to all claims, and defendant Griffin Industries' motion to strike Culberson's affidavit submitted in opposition to summary judgment. Upon consideration of the pleadings, motions, briefs,[13] depositions and evidentiary submissions, this court determines defendants' motions for summary judgment are due to be granted in part, and denied in part. Additionally, defendant Griffin Industries' motion to strike is due to be denied.

## I. DEFENDANT GRIFFIN INDUSTRIES' MOTION TO STRIKE

Griffin Industries moves to strike plaintiff's affidavit, or portions thereof, as contradictory to her deposition testimony. The Eleventh Circuit holds that "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid

---

[13] The court has considered the following briefs: Memorandum in Support of Defendant Griffin Industries' Motion for Summary Judgment; Plaintiff's Response and Brief with Respect to the Defendants' Motions for Summary Judgment; and Memorandum in Support filed with Defendant Griffin Industries' Motion for Leave to File Reply Memorandum in Support of its Motion for Summary Judgment.

explanation." *Van T. Jenkins and Associates v. U. S. Industries*, 736 F.2d 656 (11th Cir. 1984). Nevertheless, "[t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the ... affiant ... was stating the truth." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986). Thus, the Eleventh Circuit requires the district to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit. *Tippens*, 805 F.2d at 954. If no such inconsistency exists, the general rule allowing an affidavit to create a genuine issue, "even it if conflicts with earlier testimony in the party's deposition," governs. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980).[14] Griffin points to three purported contradictions between Culberson's affidavit submitted in opposition to summary judgment, and her testimony on deposition and by affidavit before the Equal Employment Opportunity Commission (EEOC).

First, Griffin argues that Culberson's claim in affidavit that she told Reko the pictures "should be taken down" contradicts her two earlier characterizations of what she said to Reko about the pinups. (*See* Culberson Affidavit at 2, ¶ 3.) In her EEOC affidavit, Culberson stated that she

> brought this to the attention of the plant manager, David
> Ricco. He laughed at me and told me that that was Ed's

---

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

idea of a perfect women.  There was a plaque in there
also inscribed 'looking for the perfect women.'  I told
Mr. Ricco if he removed this type material from the area
he might find the perfect women.

(EEOC  Affidavit  at  2  (emphasis  supplied)(misspellings  in
original).)  In deposition, Culberson testified only that she "went
to Mr. Reko and told him I didn't approve of the calendar...."

Second, Griffin argues that Culberson's affidavit testimony
suggesting that Dave Reko might have been responsible for placing
the offensive drawing on the secretary's desk, because he was "the
only other person I saw in that office"[15] that night, contradicts
plaintiff's deposition testimony, during which she stated only the
following:

> Q.   This affidavit also talks about you finding a drawing of
>      a penis on someone's desk?
> A.   Yes, a lady's desk.
> Q.   Did you complain about that to anyone?
> A.   No, ma'am.  I got — left out with this and I just wadded
>      it up and throwed it in the garbage.

(Griffin's  Memorandum  in  Support  at  2  (quoting  Culberson's
Deposition at 83).)

Third, Griffin argues that the details provided in Culberson's
affidavit about her encounter with Reko in the office kitchen[16]
contradict the following account she gave to the EEOC:

> During the first week in October, I went in and began
> cleaning the cabinets of the kitchen.  I was standing at
> the sink which was a double one.  Mr. Ricco [sic] came
> into the area where I was and rubbed up against me and
> began looking at me with bedroom eyes.  He said, "HI".
> I was astonished.  I stepped back and said "BYE".

(EEOC Affidavit at 3.)

---

[15] *See* Culberson Affidavit at 3, ¶ 5.

[16] That testimony is set forth fully at page 3 *infra*.

The court does not find any inherent inconsistencies between Culberson's affidavit and the testimony cited by Griffin. Rather, the court finds those passages quoted from Culberson's EEOC affidavit and deposition lack detail, an omission Culberson appropriately remedied by affidavit in opposing defendants' motion for summary judgment. Tellingly, Griffin's counsel apparently did not ask Culberson directly on deposition whether she asked Reko to remove the pictures. Griffin's counsel did not ask Culberson if anyone else was in the office on the night she found the offensive drawing, nor did counsel ask Culberson to describe precisely how Reko "rubbed up against" her in the kitchen. If such questions were asked, they have not been directed to the court's attention.

Instead, Griffin attempts to conjure contradictions by linking the above testimony to Culberson's answers to the following broad questions:

> Q.   Have you told us everything that you know about these incidents you've talked about?
> A.   Yes, sir.
> Q.   You don't know of anything else, do you?
> A.   If I do, I'm unaware of it.
> Q.   You would have told us through this examination—
> A.   Yes, sir.
> Q.   — You've told us everything that happened?
> A.   Yes, sir.
> Q.   And, in fact, you put it in your affidavit, didn't you?
> A.   Yes, sir.

(Griffin's Memorandum in Support at 2 (quoting Culberson's Deposition at 110-11).) Counsel's failure to probe deeply enough on deposition to have elicited the details it now finds objectionable does not bar plaintiff's introduction of those details into the case in opposition to summary judgment. Although

a jury may find differences in Culberson's testimony that affect her credibility, or diminish her persuasiveness, none of the minor elaborations at issue on Griffin's motion to strike are so inherently inconsistent that the court must disregard the affidavit as a matter of law. Accordingly, Griffin Industries' motion to strike is due to be denied, and Culberson's affidavit will be considered by the court in ruling on defendants' motions for summary judgment.

## II. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Id.* In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.* (quoting *Adickes v. S.H. Kress & Co.,*

398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)). In meeting its burden, the nonmoving party may "avail itself of all facts and justifiable inferences in the record taken as a whole." *Id.* (quoting *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 998 (11th Cir. 1992)(citations omitted)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Allen,* 121 F.3d at 646 (quoting *Tipton,* 965 F.2d at 999 (citations omitted)). Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (quoting *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)).

## A. Title VII Claims

Title VII "prohibits employment discrimination on the basis of gender, and seeks to remove arbitrary barriers to sexual equality at the workplace with respect to 'compensation, terms, conditions, or privileges of employment.'" *Henson v. City of Dundee,* 682 F.2d 897, 901 (11th Cir. 1981)(citations omitted). Plaintiff presents three claims under Title VII: *quid pro quo* sexual harassment; sexually hostile work environment; and retaliation. Defendants move for summary judgment as to each of those claims.

### 1. Count One - *quid pro quo* harassment

Sexual harassment violates Title VII's prohibition of employer discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex...." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). "*Quid pro quo* sexual harassment occurs when an employer changes an employee's conditions of employment because of ... <u>refusal to submit to sexual demands</u>." *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1362 (11th Cir. 1994)(emphasis added)(citing *Steele*, 867 F.2d at 1315).

In order to establish a violation of Title VII on grounds of sexual harassment of this kind, an employee must prove the following five elements: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) *respondeat superior*. *Henson*, 682 F.2d at 908. The only challenge either defendant raises to plaintiff's *quid pro quo* claim is that Mrs. Culberson "does not allege that anyone demanded sexual favors from her."[17]  (Memorandum

---

[17] In moving for summary judgment, defendants treated Count One of Culberson's complaint as one based on disparate treatment. In response, plaintiff made clear that Count One is based on *quid pro quo* sexual harassment, which constitutes sex discrimination under Title VII. By order entered May 29, 1997, this court granted defendant Griffin Industries leave to file a reply brief on the *quid pro quo* issue. No such brief has been filed. Even so, in its memorandum in support of its motion for leave to file a reply brief, defendant Griffin Industries argues that the facts as alleged by plaintiff do not allege *quid pro quo* sexual harassment. This court is persuaded, however, that a *quid quo pro* claim is viable on the facts alleged in the complaint.

in Support filed with Defendant Griffin Industries' Motion for Leave to File Reply Memorandum at 3.)

Yet, "a blatant request for sexual favors is not necessary to establish a claim of *quid pro quo* harassment." *Morrow v. Auburn University at Montgomery*, 973 F. Supp. 1392, 1403 (M.D. Ala. 1997). While the alleged harasser's sexual demand need not be express, there nevertheless should be a reasonable "verbal/temporal" relationship between the offensive conduct and discussion of the employee's job benefit or detriment. *See Morrow*, 973 F. Supp. at 1403 (quoting *Fowler v. Sunrise Carpet Industries, Inc.*, 911 F. Supp. 1560, 1578 (N.D. Ga. 1996)).

Culberson has alleged (and presented evidence of) one act by Dave Reko that could be construed as a sexual demand: the incident in the office kitchen in which he touched her breast with his shoulder and looked at her with "bedroom eyes." Under guidelines issued by the Equal Employment Opportunity Commission (EEOC), that act alone could constitute sexual harassment:

> Unwelcome sexual advances, requests for sexual favors, and other <u>verbal or physical conduct of a sexual nature constitute sexual harassment</u>....

29 C.F.R. § 1604.11(a)(3)(1981)(emphasis supplied).[18] Under Title VII, however, such conduct is not actionable under a *quid pro quo* theory unless "[t]he acceptance or rejection of the harassment by an employee [is] an express or implied condition to the receipt of

---

[18] In General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, L.Ed.2d 343 (1976), the Supreme Court suggested the degree to which courts should defer to the EEOC's interpretation of Title VII: "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance...." (citations omitted).

a job benefit or the cause of a tangible job detriment...." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1552 (11th Cir. 1997)(quoting *Henson v. City of Dundee*, 682 F.2d 897, 909 (11th Cir. 1982)).

Here, Culberson alleges that immediately after the kitchen sink encounter, Reko initiated a discussion of Culberson's salary at which he attempted to lower her hourly wage. The temporal proximity of those two events — a mere five minutes apart — is sufficient to support an inference that Reko intended to condition final determination of Culberson's hourly wage — a tangible job benefit — on her reaction to his touching while batting "bedroom eyes." When Culberson reacted negatively, Reko instead lowered her wage and, when she objected to that, he replaced her. Those allegations, considered in a light most favorable to plaintiff, are sufficient to create a question of fact as to whether Reko made a sexual demand of Culberson, and whether he lowered her salary because she refused that demand. *See Sparks v. Pilot Freight Carriers*, 830 F.2d 1554, 1564-65 (11th Cir. 1987)(finding a prima facie case of *quid pro quo* sexual harassment where employee was ultimately fired following her refusal to accede to supervisor's sexual demands). Accordingly, defendants' motion for summary judgment as to Count One is due to be denied.

**2. Count Two - sexually hostile work environment**

A plaintiff can establish a violation of Title VII by proving that sexual harassment has created a hostile or abusive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106

S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Hostile work environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989). The United States Supreme Court explains that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, [it] is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)(citing *Vinson*, 477 U.S. at 65, 67, 106 S.Ct. at 2405)(internal quotation marks omitted).

The five elements of a *prima facie* Title VII claim for hostile work environment sexual harassment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon the employee's sex; (4) the harassment complained of affected a "term, condition, or privilege" of employment, in that it was "sufficiently severe or pervasive to alter the condition of [the victim's] employment and create an abusive working environment"; and (5) *respondeat superior.* *Henson*, 682 F.2d at 903-905; *Martin v. Norfolk Southern Railway Company*, 926 F.Supp. 1044, 1050 (N.D. Ala. 1996).

The evidence reveals, and defendants do not dispute, that plaintiff can establish the first three elements of a *prima facie*

case. Instead, defendants attack plaintiff's proof on the last two elements, honing the crucial inquiries in this case to these points: whether Reko's conduct was sufficiently severe or pervasive to establish a Title VII violation, and, if so, whether Griffin Industries can be held liable for his conduct.

### a. severe or pervasive conduct

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370. In evaluating whether harassment is sufficiently severe or pervasive to bring it within Title VII's purview, courts must examine the totality of circumstances, including: "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. Defendants argue that, even if plaintiff's claims are true, "the isolated incidents she describes are not severe or pervasive enough to create an objectively hostile work environment or create an environment that a reasonable person would find hostile or abusive." (Memorandum in Support of Defendant Griffin Industries' Motion for Summary Judgment at 9.)

The Seventh Circuit, in discussing "the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing," held that the "vulgar banter, tinged with

sexual innuendo, of coarse or boorish workers" falls on the merely offensive, and non-actionable, side of that line. *Baskerville v. Culligan International Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995)(Posner, C.J.). As to the swimsuit calendar, the plaque, and the drawing of a penis which adorned the offices at Griffin Industries, this court concurs. Although the posting of revealing sexual pictures in an office setting is inappropriate and distasteful, and was clearly offensive to this plaintiff, indulgence of an adolescent decorating scheme is not a violation of Title VII. Exposure to pictures of this nature is simply not the type of interference with a reasonable person's work performance which garners the protection of Title VII.[19] "[O]nly a woman of Victorian delicacy - a woman mysteriously aloof from contemporary American popular culture in all its sex-saturated vulgarity - would" think otherwise. *Baskerville*, 50 F.3d at 431. Even so, those offensive office ornaments do not paint a complete picture of the environment in which Mrs. Culberson worked; that is, they do not comprise the totality of the circumstances in which she worked. Rather, those items must be considered together with the more troubling kitchen sink encounter between Culberson and Reko.

Numerous courts hold that physical contact with a person's intimate body areas constitutes unlawful harassment, even if it

---

[19] The court does not mean to suggest that sexually explicit photographs could never form the basis of a sexual harassment claim under Title VII. Rather, it is the particular pictures at issue in this case which fail to cross the line to become actionable harassment. Indeed, the court notes that grocery stores, magazine stands and even public libraries are inundated with pictures significantly more revealing than the photographs on display at Griffin Industries. For examples, see the perennially popular swimsuit edition of *Sports Illustrated*, or the revealing photographs which grace the covers of many mainstream magazines, such as *Cosmopolitan*.

occurs only once. *See* I B. Lindemann & P. Grossman, *Employment Discrimination Law* 795 n.240 (3d ed. 1996). As the EEOC explains,

> unwelcome, intentional touching of a charging party's intimate body areas is sufficiently offensive to alter the conditions of [the] working environment and constitute a violation of Title VII. More so than in the case of verbal advances or remarks, a single unwelcome physical advance can seriously poison the victim's working environment.

EEOC Policy Guidance: Sexual Harassment, N-915.035 (quoted in *Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 844 (2d Cir. 1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1314 (1991), and in *Stroehmann Bakeries, Inc. v. Local 776, International Brotherhood of Teamsters*, 969 F.2d 1436 (3d Cir.), *cert. denied*, 506 U.S. 1022, 113 S.Ct. 660(1992)).

Culberson alleges that Reko touched her breast while making "bedroom eyes" at her, then reduced her hourly wage when she spurned him. That one allegation, if true, is sufficiently severe to alter the conditions of Culberson's employment and create an abusive working environment. Accordingly, plaintiff has established that Reko's conduct was sufficiently "severe or pervasive" to rise to the level of a Title VII claim under a sexually hostile work environment theory.

### b. employer liability

The Eleventh Circuit recently articulated the proper framework for analyzing an employer's liability in hostile work environment cases. *See Faragher v. City of Boca Raton*, 111 F.3d 1530 (11th Cir. 1997)(*en banc*). That framework outlines two distinct avenues

of employer liability for such a claim: direct liability, and indirect, or vicarious, liability. *Faragher*, 111 F.3d at 1535.

Accordingly, Griffin Industries is directly liable for hostile work environment sexual harassment perpetrated by Dave Reko only "if it knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." *Id.* (citing *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989) and *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982)). This avenue of liability attaches to Griffin Industries only "for its own negligence or recklessness, but not for the conduct of its supervisors or employees." *Id.*

Alternatively, Griffin Industries is "indirectly, or vicariously, liable for the wrongful conduct of its agent, whether or not the employer knew or should have known about the agent's wrongful act." *Id.* Under this approach, "an employer may be indirectly liable for hostile environment sexual harassment by a superior: (1) if the harassment occurs within the scope of the superior's employment; (2) if the employer assigns performance of a non-delegable duty to a supervisor and an employee is injured because of the supervisor's failure to carry out that duty; or (3) if there is an agency relationship which aids the supervisor's ability or opportunity to harass his subordinate." *Id.* (citing Restatement (Second) of Agency § 219(1), (2)(c), (2)(d).

Defendants argue that Culberson cannot establish that Griffin knew, or should have known, of the alleged harassment, because she

never complained to higher management. Absent such a showing,
defendants claim an employer cannot be liable for the acts of its
supervisor.    (Memorandum  in  Support  of  Defendant  Griffin
Industries' Motion for Summary Judgment at 6.)    Defendants are
correct as far as their argument goes. To prove direct liability,
plaintiff must have evidence that Griffin Industries either knew,
or should have known, of the harassment. Yet, as the Eleventh
Circuit made clear in *Faragher*, direct liability is but one of two
routes to employer liability.

     The Eleventh Circuit holds that a supervisor's harassing
conduct "is typically outside the scope of his employment."
*Faragher*, 111 F.3d at 1535 (citing *Steele*, 867 F.2d at 1311).
Nevertheless, "when a harasser is acting outside the scope of his
employment, but is aided in accomplishing the harassment by the
existence of the agency relationship," the employer may be held
vicariously liable.    *Id.* at 1536 (citing *Sparks v. Pilot Freight
Carriers, Inc.*, 830 F.2d 1554, 1559-60 (11th Cir. 1987)).    The term
"aided" is not construed broadly, however.    *Id.* at 1537.    Rather,
employer  liability  attaches  only  when  "the  harassment  is
accomplished by an instrumentality of the agency or through conduct
associated with the agency status."    *Id.; see also, e.g, Sparks*,
830 F.2d at 1560 (imposing liability on employer because harasser
repeatedly reminded the victim he could fire her if she refused his
advances); *Karibian v. Columbia University*, 14 F.3d 773, 780 (2d
Cir. 1994)(holding employer liable for hostile environment sexual
harassment where supervisor capitalized on his authority over

plaintiff to force her into sexual relationship); *Gary v. Long*, 59 F.3d 1391, 1397 (D.C. Cir.), *cert. denied*, __ U.S. __, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995)("[l]iability is based upon the fact that the agent's position facilitates the consummation of the [tort because] the agent appears to be acting in the ordinary course of the business confided to him")(quoting Restatement § 261 cmt. a; *see also id.* § 219 cmt. e (citing § 261 in discussion of § 219(2)(d)).

Culberson does not allege that Reko ever threatened to fire her or to reduce her salary — she alleges that he simply did so. His alleged touching of Culberson in the office kitchen, and his immediate revision of her salary upon being spurned, were acts made possible by his job as general manager of Griffin Industries's bakery processing plant. Reko's intertwining of a sexual come-on — which was admittedly beyond the scope of his authority — with a discussion of Culberson's wage — which was fully within Reko's authority as general manager — was "accomplished by an instrumentality of the agency or through conduct associated with the agency status." *Faragher*, 111 F.3d at 1536. In that sense, then, Reko's status as an agent of Griffin Industries aided his ability to harass Culberson. Accordingly, plaintiff's allegations are sufficient to establish Griffin Industries' indirect liability for Reko's harassing conduct. Defendants' motion for summary judgment, as to Culberson's hostile work environment claim, is due to be denied.

### 3. Count Three – retaliation

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). If a plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to defendants to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendants do so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendants' stated reasons are merely pretexts for unlawful, discriminatory motives. *Id.* Opposition is protected if the employee had a reasonable and good faith belief that the practice opposed constituted a violation of Title VII. *EEOC v. White & Son Enterprises*, 881 F.2d 1006, 1012 n.5 (11th Cir. 1989). Defendants argue that Count Three must fail because "plaintiff did not engage in statutorily protected activity; *i.e.*, she did not oppose the alleged harassment by reporting it to Griffin Industries.

Defendants are correct that Culberson did not report Reko's conduct in the kitchen on her last day of employment to anyone at Griffin Industries; her only complaint during her employment was made to Reko and concerned the calendar and plaque in Ed Buttery's

office.[20]  Even so, Culberson's retaliation claim is not based on that complaint about Buttery's decor; rather, she alleges retaliation "on the basis of her having rejected the plant manager's wrongful sexual harassment/sexual advancement and thereby having complained about said sexual harassment." (Complaint ¶ 16.)

Several district courts have determined that opposition to unlawful employment practices under 42 U.S.C. § 2000e-3 encompasses a simple rebuff of sexual advances.  *See Fleming v. The South Carolina Department of Corrections*, 952 F. Supp. 283, 288 (D.S.C. 1996) (holding that "protected activity ... includes an employee's refusal of the sexual advances of a supervisor or employer"); *Armbruster v. Epstein*, 1996 WL 289991, at *3 (E.D. Pa. May 31, 1996)(court denied defendant's motion to dismiss finding that protected activity includes employee's refusal of sexual advances by employer); *Burrell v. City University of New York*, 894 F. Supp. 750, 761 (S.D.N.Y. 1995) (evidence supported finding that "the predominant reason for [plaintiff's] termination was in retaliation either for filing her complaint ... or for refusing to accede to [] sexual advances, both activities protected under Title VII"); *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, 671 F. Supp. 1155, 1167 (W.D. Tenn. 1987)(plaintiff engaged in protected activity by refusing her supervisor's sexual advances); *EEOC v.*

---

[20] Significantly, no one at Griffin Industries instructed Culberson on the company's sexual harassment policy or grievance procedures, to the extent they have such policies or procedures. Thus, faced with harassment by Reko, the senior management official at the plant, Culberson had no one to whom she could direct a complaint. Thus, plaintiff's failure to immediately notify the company about Reko's conduct reveals more about the inadequacy of Griffin Industries' grievance procedures, or its failure to communicate those procedures to its employees, than it does about the validity of plaintiff's claims.

*Domino's Pizza*, 909 F. Supp. 1529, 1533 (M.D. Fla. 1995)(employee ordering supervisor from his office and threatening to file a report after she came onto him was protected activity). *But see Speer v. Rand*, 1996 WL 667810, at *8 n.4 (N.D. Ill. Nov. 15, 1996); *Del Castillo v. Pathmark Stores*, 941 F. Supp. 437, 438-439 (S.D.N.Y. 1996)("even the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances"). Reko's alleged conduct of touching Culberson's breast and looking at her suggestively could be construed by a jury as a sexual demand. Culberson's refusal of that demand is opposition to unlawful conduct under Title VII. Accordingly, defendants' motion for summary judgment on Count Three is due to be denied.

**B.  State Law Claim**

**1.  Count Four - tort of outrage**

The elements of the tort of outrage are: (1) defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) defendants' conduct was extreme and outrageous; and (3) defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it. *See, e.g., American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981). Further, the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in

a civilized society." *Id.* The outrage standard is quite high: mere annoyances or indignities are not enough to make defendants liable for outrage. The plaintiff must present facts which would establish conduct so outrageous as "to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* Plaintiff alleges she was exposed to an office decorated with a sexually revealing swimsuit calendar, a plaque stating "I am looking for the perfect woman," a drawing of a penis left on an employee's desk, and an unwelcome sexual advance by the general manager of the plant. This court is not persuaded, however, that the facts of this case remotely approach the level required by the Alabama Supreme Court. Accordingly, defendants' motion as to Count Four is due to be granted.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is due to be granted in part and denied in part. Additionally, defendant Griffin Industries' motion to strike plaintiff's affidavit is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this _18th_ day of December, 1997.

_____
United States District Judge

25